1  JOSEPH W. COTCHETT
   (36324; jcotchett@cpmlegal.com)
2  PHILIP L. GREGORY
   (95217; pgregory@cpmlegal.com)
3  PAUL N. MCCLOSKEY
   (24541; pmccloskey@cpmlegal.com)
4  STUART G. GROSS
   (251019; sgross@cpmlegal.com)
5  **COTCHETT, PITRE & McCARTHY**
   840 Malcolm Road, Suite 200
6  Burlingame, CA 94010
   Telephone: (650) 697-6000
7  Facsimile: (650) 697-0577

8  SHARON E. DUGGAN                    KEVIN P. BUNDY
   (105108; foxsduggan@aol.com)        (231686; kbundy@biologicaldiversity.org)
9  **ATTORNEY AT LAW**                 **CENTER FOR BIOLOGICAL DIVERSITY**
   370 Grand Avenue, Suite 5           351 California Street, Suite 600
10 Oakland, CA 94610                   San Francisco, CA 94104
   Telephone: 510-271-0825             Telephone: 415-436-9682 x313
11 Facsimile: 510-271-0829             Facsimile: 415-436-9683

12 *Attorney for Petitioners and Plaintiffs*

13

14                 UNITED STATES DISTRICT COURT

15                NORTHERN DISTRICT OF CALIFORNIA

16 BESS BAIR; TRISHA LEE LOTUS; BRUCE      Case No.      **10      4360**
   EDWARDS; JEFFREY HEDIN; LOREEN
17 ELIASON; ENVIRONMENTAL                  **COMPLAINT**
   PROTECTION INFORMATION CENTER, a
18 non-profit corporation; CENTER FOR
   BIOLOGICAL DIVERSITY, a non-profit      (National Environmental Policy Act; Wild
19 corporation; and CALIFORNIANS FOR       and Scenic Rivers Act; Administrative
   ALTERNATIVES TO TOXICS, a non-profit    Procedure Act)
20 corporation,

21             Plaintiffs,

22        v.

23 STATE OF CALIFORNIA DEPARTMENT
   OF TRANSPORTATION, CINDY McKIM,
24 in her official capacity as Director of the State
   of California Department of Transportation,
25
             Defendants.
26

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

                            **COMPLAINT**

## TABLE OF CONTENTS

**Page(s)**

I.      **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     **PARTIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.      Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.    **JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.     **VENUE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.      **INTRADISTRICT ASSIGNMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI.     **OUR RICHARDSON GROVE AND CALTRANS' PLAN FOR
        ITS DESTRUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      Driving Through History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.      Destroying Our Redwoods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        C.      Threatened by Trucks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        D.      Caltrans Failed to Properly Provide for Public Review . . . . . . . . . . . . . . . . . 19

        E.      Caltrans' EA Was Deficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        F.      The EA/FONSI Fails to Remedy the EA's Deficiencies . . . . . . . . . . . . . . . . . 23

VII.    **PLAINTIFFS HAVE COMPLIED WITH ALL PROCEDURAL
        REQUIREMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        A.      Irreparable Harm and Arbitrary and Capricious Action . . . . . . . . . . . . . . . . . 27

        B.      Exhaustion of Administrative Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        C.      Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        D.      Attorneys Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

VIII.   **CLAIMS FOR RELIEF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**FIRST CLAIM FOR RELIEF**
**(Violation of NEPA)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**SECOND CLAIM FOR RELIEF**
**(Violation of NEPA - Purpose and Need)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**THIRD CLAIM FOR RELIEF**
**(Violation of NEPA - Failure to Evaluate Impacts)** . . . . . . . . . . . . . . . . . . . . . . . . 31

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**FOURTH CLAIM FOR RELIEF**
(Violation of NEPA - Failure to Evaluate Alternatives) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**FIFTH CLAIM FOR RELIEF**
(Violation of NEPA - Response to Comments) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**SIXTH CLAIM FOR RELIEF**
(Violation of NEPA - Failure to Circulate EA Prior to Adoption of FONSI) . . . . . . . . . . . 35

**SEVENTH CLAIM FOR RELIEF**
(Violation of NEPA - Failure to Prepare an EIS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**EIGHTH CLAIM FOR RELIEF**
(Violation of Section 4(f)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**NINTH CLAIM FOR RELIEF**
(Wild and Scenic Rivers Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**TENTH CLAIM FOR RELIEF**
(Violations of APA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**ELEVENTH CLAIM FOR RELIEF**
(Injunctive Relief) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**PRAYER FOR RELIEF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

ii

1    Plaintiffs Bess Bair Trisha Lee Lotus, Bruce Edwards, Jeffrey Hedin, Loreen Eliason,

2  Environmental Protection Information Center, Center for Biological Diversity, and Californians for

3  Alternatives to Toxics (hereinafter collectively referred to as "Plaintiffs") allege as follows:

## I.    INTRODUCTION

5    1.    This is a case of trucks versus trees.  Defendant State of California Department of

6  Transportation ("Caltrans") has chosen to endanger ancient Redwoods in a State Park to benefit

7  large commercial trucks.  Caltrans has proposed a project to slightly widen a one mile stretch of

8  U.S. Highway 101 that passes through California's Richardson Grove State Park, under and

9  between ancient redwood trees that have stood in the area for as many as 3000 years, measure as

10  much as eighteen feet in diameter, and reach heights of 300 feet.  Caltrans has gone so far as to

11  misname this effort as the "the Richardson Grove Operational Improvement Project."

12    2.    By Caltrans' own admission, the Project threatens to destroy these ancient and

13  irreplaceable Redwoods in the Richardson Grove by cutting the roots or compacting hundreds of

14  cubic yards of soil and paving over the roots. The Final Environmental Impact

15  Report/Environmental Assessment ("EA") states: "This work will involve the structural root

16  zones of approximately 66 old growth redwood trees ranging from 3 to 18 feet in diameter..."

17  (EA p. 21).  (As discussed herein, the actual number of ancient Redwoods that would be

18  affected by the Project is seventy-two. )  The EA continues:  "Additional paving and the

19  placement of shoulder backing could cause soil compaction and disturbance within the structural

20  root zones of old growth Redwoods.  Studies have shown that compaction of the soil within the

21  root zone can have an adverse effect on these trees (Arnold 1973).  *Adverse effects to old*

22  *growth trees may be a significant impact to this unique natural community*."  (*Id.*, p. 22).

23  (Emphasis added).

24    3.    Remarkably, Caltrans purports to justify this risk for a single purpose:  lifting a

25  general restriction on the passage through Richardson Grove of what are known as Surface

26  Transportation Assistance Act of 1982 or "STAA" trucks.  Again, Caltrans acknowledges that

27  the Project is unnecessary as these STAA trucks already regularly pass through the Grove, by

28  virtue of granted exemptions, and do so without incident.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

2

4.      STAA trucks carry trailers that are 8 to 13 feet longer than what are known as "California legal" trailers.  Presently these elongated trucks are generally prohibited from going through Richardson Grove Park; however exemptions to pass through the grove are regularly granted to cattle hauling trucks and household moving vans of comparable length, and these trucks have passed through the grove without a recorded accident.

5.      Richardson Grove State Park provides the gateway to majestic old growth Redwoods unique to California's northern coast.  U.S. Highway 101 threads through Richardson Grove Park for approximately a mile.  Rated as one of the 100 finest state parks in America, thousands of visitors annually trek to this historic gem, seeking to enjoy the awe, reverence and spirituality of Richardson Grove State Park. Visitors are offered a true glimpse of history as they drive amidst old-growth Redwoods ranging between 1,000 and 3,000 years old, some as large as 18 feet in diameter, immediately adjacent to or abutting the highway.  In some areas the Redwoods and other trees cause the narrowing of the two-lane highway to only 22 feet in width, with shoulders of 2 feet or less.

6.      Despite the probable destruction that Caltrans admits will likely be caused to the ancient Redwoods in the grove and impacts on the human environment this will create,  Caltrans, has through its adoption of a Finding of No Significant Impact ("FONSI," together with the EA, "FONSI/EA"), attempted to railroad through the Project without adequately studying the Project's potentially severe and permanent human environmental consequences and without explaining or justifying the Project's purpose or need.

7.      Indeed, Caltrans failed to meet a laundry list of requirements under the National Environmental Policy Act ("NEPA") (42 U.S.C. § 4321 *et seq*.) and Section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 303, also codified at 28 U.S. § 138, and the Wild and Scenic Rivers Act (16 U.S.C. § 1271 et seq.).  Despite these failures, on May 18, 2010, Caltrans certified the EA and adopted a FONSI approving the Project.

8.      The cover of  Caltrans's EA/FONSI (displayed below) illustrates the Project's essential problem – the road at its current width already cuts so close to the old-growth trees that any widening will cause a devastating impact.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

3



9. While far less immediately obvious, the impact that the Project would have on the old-growth Redwoods the root zones of which lay in the path of the Project would be equally devastating.

10. Indeed, Comment No. 9 submitted by the California State Department of Parks and Recreation North Coast Redwoods District ("State Parks") to the Draft Environmental Impact Report/Environmental Assessment ("Draft EA") states: "The hardened surface associated with the roadbed and shoulder is a significant adverse effect on the health of any mature tree, including old-growth redwood, where it encroaches into that tree's critical root zone . . . However the [Draft EA] does not document whether or not the proposed action will increase the cumulative amount of hardened surface on the critical root zone or decrease it. Unless such a detail analysis is conducted, the significance of the proposed action on old-growth redwoods cannot be evaluated. Once this information is provided, it can be evaluated for the significance of the impact to the trees. If that information is not provided, there is not enough substantial evidence to make a finding of significant or less than significant.

1   11. State Parks further states in its Comment 31 to the Draft EA: "The [Draft EA] . . .

2 does not provide an assessment of the number of trees that will have their structural root zone

3 compromised through the placement of an impervious surface within the structural root zone or

4 an estimate of the number of trees that will have structural roots severed.   Without such an

5 assessment the State Parks cannot adequately assess the proposed actions impacts on old-growth

6 redwoods and other mature trees.   The Department therefore must assume that the proposed

7 action will result in significant adverse effects to old-growth redwoods and that adequate

8 mitigation needs to be developed."

9   12. Caltrans, however, not only ignored these and numerous other likely

10 environmental consequences of its Richardson Grove Project, but also denied Plaintiffs and the

11 hundreds, if not thousands, of other concerned persons a meaningful opportunity to review and

12 comment upon the Richardson Grove Project and its stated justifications. Caltrans also gave no

13 meaningful consideration to the numerous alternatives that existed to its destructive plans,

14 including simply granting more exceptions to operators of STAA trucks that desired to pass

15 through the grove, and failed to properly consider or explain the project's purpose or need.

16   13. Traveling under these Redwoods, which tower over Highway 101 as it passes through

17 Richardson Grove, is for many people the only experience they will ever have of these utterly unique

18 and majestic forms of nature. No other plant, tree or animal in the world compares to the size of

19 ancient Redwoods, and for many first-time travelers of Highway 101 through Richardson Grove the

20 experience is profound and deeply moving.

21   14. In a transparent and inept attempt to mask the true purpose of the project–lifting the

22 general limitation on passage of STAA trucks through the grove, Caltrans initially attempted justified

23 the Richardson Grove Project on <u>safety</u> concerns.   However, Caltrans was not able to offer any

24 evidence in support of those concerns, other than the results of a computer model, which purportedly

25 showed the dangerous conditions produced by the highway's current route. These results were

26 contrary to the evidence, such as accident reports, which failed to support any such safety issues.

27 Despite  (or because of) this divergence between observed reality and the results of its model,

28 Caltrans never provided the public with information regarding how the computer model was

1 constructed; thus, the public was never given the opportunity to meaningfully challenge the computer
2 model's results.

3      15.    Nonetheless, Caltrans ultimately admitted the Richardson Grove Project would not
4 solve any safety problems, real or imagined. Rather, the EA states: "The project is not a safety
5 project, but an operational improvement project to lift the STAA restriction at this location. . . . The
6 primary purpose of the Project is to lift the restriction on STAA vehicles on the portion" of Highway
7 101 that runs through Richardson Grove State Park.

8      16.    Again, the Caltrans proposes to engage in a multimillion dollar project that endangers
9 the survival of giant old-growth Redwoods that have towered over the area for millennia not to solve
10 any safety issues, but rather to let longer trucks pass through a one mile stretch of road without the
11 hassle of seeking an exemption. The short-sightedness of this Project is dumbfounding.

12      17.    Plaintiffs hereby challenge Caltrans' approval of the Richardson Grove Project and
13 Caltrans' adoption of the EA/FONSI as violations of NEPA, the Department of Transportation Act,
14 the Wild and Scenic Rivers Act, and other applicable law, and seek an order by this Court enjoining
15 Caltrans from taking any further action on the Richardson Grove Project until it meets all applicable
16 legal requirements. These individual Plaintiffs and the organizational Plaintiffs' members are
17 committed to taking all possible steps to preserve Richardson Grove State Park's old-growth
18 Redwoods for posterity. These individual Plaintiffs and the organizational Plaintiffs' members are
19 informed and believe Caltrans' Project will cause irreparable harm to those Redwoods. Plaintiffs
20 allege they have standing to sue and have exhausted any and all administrative remedies prior to
21 filing this Complaint.

22      18.    The Redwoods of Richardson Grove are a profound natural resource. Federal law
23 prohibits the sacrificing of these old-growth Redwoods for immense trucks in such a haphazard and
24 capricious way. The Grove should be preserved for the trees, not destroyed for the trucks.

25                             **II.   PARTIES**

26 **A.   Plaintiffs**

27      19.    Plaintiff BESS BAIR is the granddaughter of Bess and Fred Hartsook. In 1919, her
28 grandparents honeymooned in a cabin six miles south of Garberville, California. The cabin was

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

6

1 immediately below Richardson Grove State Park. During the 1920's, Fred Hartsook purchased the
2 honeymoon cabin and extended it into a resort, comprising 37 acres of pristine redwood forest,
3 known as The Hartsook Inn. The resort became a major attraction for Hollywood celebrities, with
4 guests including Mary Pickford and Bing Crosby. The Hartsook Inn survived under a succession of
5 owners until the 1990s, when the last operator sold the property to the Save-The-Redwoods League.
6 Bess was raised in Northern California, making frequent visits to the Redwoods in and around the
7 Richardson Grove State Park. She continues to visit these same Redwoods as an adult and intends
8 to do so in the future. Since 1975, Bess has resided in San Francisco County, California.

9      20.    Plaintiff TRISHA LEE LOTUS is the great granddaughter of Henry Devoy, who in
10 1922 transferred to the State of California the 120 acres which became the initial acreage of the
11 Richardson Grove State Park. Trisha was born in Santa Rosa and every summer as a child visited
12 the Redwoods in and around the Richardson Grove State Park. She continues to visit these same
13 Redwoods as an adult and intends to do so in the future. Since 1998, Trisha has been a resident of
14 Humboldt County, California.

15      21.    Plaintiff BRUCE EDWARDS lives in Redway, California, north of Richardson Grove
16 State Park. Bruce is a self-employed licensed contractor. Bruce frequently works in Cook's Valley,
17 California, immediately south of Richardson Grove State Park. As a result, his work requires him
18 to drive a truck on a regular basis through Richardson Grove State Park in both directions of
19 Highway 101. Since 1994, Bruce has been a resident of Humboldt County.

20      22.    Plaintiff JEFFREY HEDIN resides in Piercy, California. Jeff is an elected
21 commissioner with the Piercy Fire Protection District and a volunteer responder to emergency calls
22 in Humboldt and Mendocino Counties. While he is performing his volunteer responder and work
23 duties, Jeff drives on Highway 101 through Richardson Grove State Park. Jeff is a retired licensed
24 contractor and a disabled Vietnam War Veteran.

25      23.    Plaintiff LOREEN ELIASON is the sole proprietor of Riverwood Inn, the last original
26 "roadhouse" on Highway 101 in Humboldt County. Built in 1937, the Riverwood Inn provides
27 lodging, dining, cocktails, and entertainment to visitors from around the world. The Riverwood Inn
28 is located six miles north of Garberville, California, at the beginning of the Avenue of the Giants.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

7

1 Loreen is a Humboldt County native, who has spent her entire life in Northern California. Loreen
2 believes that preservation of Richardson Grove is absolutely critical to the economy of the region,
3 on which her business and other area businesses depend.

4 24. Plaintiff ENVIRONMENTAL PROTECTION INFORMATION CENTER ("EPIC")
5 is a non-profit public interest organization formed to promote environmental values and
6 environmental protection. EPIC is located in the State of California and has approximately 2,000
7 members, who live throughout California. EPIC is beneficially interested in the aesthetic enjoyment
8 and continued productivity of land, forest and other water resources, in the preservation of wildlife
9 and protected species including the Marbled Murrelet, the Northern Spotted Owl and anadromous
10 salmonids at self-perpetuating population levels, in protection of ancient Redwoods, watersheds, and
11 in protection of other natural resources and our environment. Members of EPIC travel throughout
12 California for personal, aesthetic and recreational pursuits, including hiking, bird watching and
13 enjoying California's incredible beauty. Members of EPIC regularly visit and enjoy California State
14 Parks, including the remarkably beautiful and majestic Richardson Grove State. EPIC's members
15 depend for their livelihood, health, culture and well-being on the viability of vegetation and land
16 throughout California. EPIC's members rely upon water from throughout California. Members of
17 EPIC also observe, study, recreate, gather or otherwise enjoy the unique biologic, scientific and
18 aesthetic benefits of Richardson Grove State Park, which EPIC members experience as important
19 and unique State and public resources. EPIC's members intend to continue visiting Richardson
20 Grove State Park in the future, in pursuit of these interests and benefits.

21 25. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("CBD") is a non-profit New
22 Mexico corporation with offices in Alaska, Arizona, California, Illinois, Minnesota, Nevada, New
23 Mexico, Oregon, Vermont, and Washington, D.C. CBD is actively involved in wildlife and habitat
24 protection issues throughout the United States, and has members throughout our country, thousands
25 of whom reside in California. CBD's members and staff include individuals with educational,
26 scientific, spiritual, recreational and other interests in protection of ancient Redwood trees and the
27 species which depend on those trees, including the Marbled Murrelet and the Northern Spotted Owl.
28 CBD's members and staff enjoy the biological, recreational and aesthetic values of the California

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

8

1 parks where species such as the Marbled Murrelet and the Northern Spotted Owl live, including the
2 Richardson Grove State Park. CBD's members and staff have participated in efforts to protect and
3 preserve the habitat essential to the continued survival of the Marbled Murrelet and the Northern
4 Spotted Owl. CBD's members and staff intend to visit Richardson Grove State Park in the future
5 to enjoy, appreciate, view, and study the ancient Redwood trees and to seek out and observe the
6 Northern Spotted Owl and Marbled Murrelet in their natural habitat. CBD brings this action on its
7 own behalf and on behalf of its adversely affected members and staff.

8      26.    Plaintiff CALIFORNIANS FOR ALTERNATIVES TO TOXICS ("CATs") is a
9 non-profit public interest corporation, which has advocated for thirty years on behalf of its members
10 to enable their control over toxic chemicals in the environment. CATs seeks to advise and advocate
11 public concerns regarding toxic chemicals in the environment through organizing, educating,
12 advocating and building community leadership. This mission is grounded in a broader concern for
13 the sustainability of the environment. CATs and its members are actively involved in local, regional,
14 national and international government and regulatory processes concerning the exposure, use and
15 removal of toxic chemicals, including toxic lead and its constituents. CATs is a region wide
16 organization with its office in Humboldt County, California. Members of CATs depend for their
17 livelihood, health, culture and well-being on the viability of healthy environmental conditions
18 throughout California. Its members live throughout California. Members also observe, study,
19 recreate, gather or otherwise enjoy the biologic, scientific and aesthetic benefits of clean water and
20 land throughout California. Members of CATs recreate within and along the Wild and Scenic Eel
21 River and in Richardson Grove State Park, and intend to continue doing so in the future. Members
22 of CATs have an interest in knowing California remains alive with wildlife and natural wonders,
23 always beautiful and available to enjoy and utilize.

24     27.    The above-described health, recreational, scientific, cultural, inspirational,
25 educational, aesthetic, and other interests of Plaintiffs will be adversely and irreparably injured by
26 Defendants' failure to comply with NEPA, Section 4(f) of the Department of Transportation Act, 49
27 U.S.C. § 303 and 23 U.S.C. § 138, and implementing regulations, and other applicable law. These

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

9

1 are actual, concrete injuries to Plaintiffs and their members that would be redressed by the relief
2 sought herein.  Plaintiffs have no adequate remedy at law.

3      28.     Plaintiffs sue on behalf of themselves, their members, and their supporters. Plaintiffs
4 are comprised of residents of the State of California who are united by the following common
5 interests of law and fact:  Each Plaintiff is an "interested person" in the aesthetic enjoyment and
6 protection of California's public lands, including State Parks such as Richardson Grove State Park,
7 in the preservation of ancient Redwoods, fish and wildlife species at self-perpetuating population
8 levels, in the protection of our environment, and in the protection of water and air quality.

9 **B.     Defendants**

10      29.     Defendant STATE OF CALIFORNIA DEPARTMENT OF TRANSPORTATION
11 ("Caltrans") is a public and state agency within the State of California. Caltrans is the lead agency
12 for the Richardson Grove Project under NEPA.  Caltrans is using federal funding from the Federal
13 Highway Administration ("FHWA").  Caltrans has executed a Memorandum of Understanding
14 Between the Federal Highway Administration and the California Department of Transportation
15 ("MOU") under which FHWA assigned to and Caltrans assumed the delegation of authority,
16 pursuant to 23 U.S.C. § 327, to provide environmental review, consultation, or other such action
17 pertaining to the review or approval of a specific project such as Richardson Grove, as required by
18 federal environmental laws, including NEPA, 42 U.S.C. § 4331 et seq., and Section 4(f) of the
19 Department of Transportation Act of 1966, codified at 23 U.S.C. § 138 and 49 U.S.C. § 303, and
20 implementing regulations at 23 C.F.R. Part 774, and the Wild and Scenic Rivers Act, 16 U.S.C. §
21 1271 et seq.  Pursuant to this MOU, Caltrans is the agency which prepared and adopted the
22 EA/FONSI for the Richardson Grove Project.  Caltrans approved the Richardson Grove Project and
23 adopted the final EA/FONSI on May 18, 2010.

24      30.     Defendant CINDY McKIM is the Director of the State of California Department of
25 Transportation.  As Director, Ms. McKim is responsible for maintenance and operations of roadways
26 comprising the California state highway system.  Ms. McKim is sued in her official capacity.

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

1

### III.   JURISDICTION

2    31.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under
3 the laws of the United States.  This Court also has jurisdiction to review Caltrans' actions in this case
4 pursuant to 23 U.S.C. § 327(d) and the MOU. As stated in the MOU, Caltrans has consented to and
5 accepted the exclusive jurisdiction of the Federal courts for any matter arising out of or relating to
6 action for compliance, and/or enforcement of any of the responsibilities assigned by the FHWA and
7 assumed by Caltrans, including compliance of NEPA and Section 4(f) of the Department of
8 Transportation Act and the Wild and Scenic Rivers Act.  The State of California has consented to
9 federal jurisdiction and waived any claim of sovereign immunity pursuant to California Streets and
10 Highways Code § 820.1.

11    32.    An actual controversy exists between the parties within the meaning of 28 U.S.C. §
12 2201.  Final agency action exists that is subject to this Court's review under the Administrative
13 Procedure Act, 5 U.S.C. § 702 ("APA").  This Court may grant declaratory relief, and additional
14 relief, including an injunction, pursuant to 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. § 705, §
15 706(1), § 706(2)(A) & (D).

16

### IV.   VENUE

17    33.    Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(e), because a
18 substantial part of the events or omissions giving rise to the claims at issue in this action occurred
19 in this judicial district.  The Richardson Grove Project is located within this judicial district.
20 Plaintiffs reside and have offices in this district and certain of their organizational members reside
21 within this district.

22

### V.   INTRADISTRICT ASSIGNMENT

23    34.    A substantial part of the events and omissions giving rise to the claims in this case
24 impact all of Northern California and have occurred in various counties throughout the Northern
25 District, including the County of San Francisco.

26

27

❀    28
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

11

# VI. OUR RICHARDSON GROVE
## AND CALTRANS' PLAN FOR ITS DESTRUCTION

### A. Driving Through History

35. In 1922, Henry Devoy transferred 120 acres to the State of California, to establish what became the Richardson Grove State Park. At that time, a narrow dirt road wound through this iconic Redwood grove. It was not until 1927, after creation of the Park, that the road was first surfaced. With improvement of roads and increased vehicle traffic, thousands of visitors came to see these majestic Redwoods and the name "Richardson Grove" became synonymous with the Redwoods. Over time, Richardson Grove has expanded to more than 2,000 acres. Richardson Grove State Park is the gateway to the magnificent Redwood forests of Northern California, with the towering girth of these oldest living things on earth, their age estimated at 1,000 to 3,000 years, sheltering the roadway from both sides.

36. Redwood root systems are shallow and inter-related, extending 3 to 10 times beyond the diameter of the individual tree. Roots that have spent literally centuries successfully navigating their place under and through the soil must be protected to ensure water uptake, nutrient capacity, and structural stability. The California State Department of Parks and Recreation (the "State Parks") instructs all Richardson Grove visitors that "all park features are protected by law and must not be disturbed." Commenting on the Richardson Grove Project, the State Parks declared that "[a]ny project that affects the historic patina and the natural fabric of Richardson Grove State Park can have far reaching impacts to millions of people as they enter the Redwood Region." In fact, even Caltrans admits "[i]t is not possible to know where roots may be encountered."

37. Highway 101 threads through the Richardson Grove State Park, providing a transportation route for residents, visitors, tourists, commerce, and safety vehicles.

38. Richardson Grove State Park is a "heritage park" with worldwide significance, serving as the gateway to the Redwood Region and the quintessential beauty of Northern California. It provides millions of tourists breathtaking views of gigantic Redwood trees. Richardson Grove has withstood the test of time for nearly 3,000 years, as its towering ancient Redwoods shelter Highway 101, with a magnificent cathedral of trees and branches which interlace above the road. The section

1 of Highway 101 threading through Richardson Grove is eligible for scenic highway status on the
2 California Scenic Highway System, and thus exists for both transportation and scenic purposes. It
3 is an unparalleled portion of California's Highway 101.

4 39. The Richardson Grove is home for many wildlife species, including blue herons,
5 osprey, acorn woodpeckers, belted kingfishers, the protected Marbled Murrelet, and the protected
6 Northern Spotted Owl, and provides habitat for the Coho and Chinook salmon. The area is also rich
7 with cultural resources, including those of Native American people, the first known inhabitants of
8 the region, who hunted, fished, gathered food, and collected native materials for basket weaving.
9 The South Fork of the Eel River threads through the Richardson Grove and along Highway 101, and
10 is designated as a Wild and Scenic River under California law (1972) and the Federal Wild and
11 Scenic Rivers Act (1981). The South Fork of the Eel River flows north 105 miles (169 km) from
12 Laytonville to Weott, where it joins the Eel River on the left bank. The South Fork's watershed of
13 about 689 square miles (1,780 km2) drains a long and narrow portion of the Coast Range of
14 California, covering parts of Mendocino and Humboldt counties. For much of its length, the Eel
15 River parallels U.S. Route 101, including through Richardson Grove State Park.

16 **B. Destroying Our Redwoods**

17 40. California State Parks are havens for California's unparalleled natural and cultural
18 resources. As an economic engine for recreation and tourism, State Parks also generate billions of
19 dollars a year in spending in local communities and support over 100,000 jobs statewide. Facing the
20 worst financial crisis in decades, California cannot withstand threats of any kind to such an
21 immensely valuable source of jobs and revenue. Yet, these treasured parklands are facing an
22 unprecedented barrage of assaults, not only from the lack of funding, but from projects such as the
23 one challenged herein, which will encroach upon park land and devastate natural resources.

24 41. Richardson Grove State Park is directly threatened by such assaults. Caltrans
25 proposes to widen and realign Highway 101 through the Richardson Grove State Park, by removing
26 trees and cutting and impacting the root systems of ancient Redwood trees along a one-mile section
27 of the highway.

28

❀
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

13

1    42.    Caltrans is placing these ancient Redwoods at risk with this Project, particularly by

2  cutting, compacting, and placing fill on the roots of these ancient trees, endangering their very

3  survival. The Project contradicts Caltrans' own acknowledgment of "the importance of redwoods."

4  The ancient Redwoods in Richardson Grove State Park are protected trees, for which State Parks

5  declares that in "dense forests where drip lines of trees touch each other it is impossible to install a

6  new facility without causing damage." State Parks advises that:

7    There should be no construction activities in the Structural Root Zone of a protected
   tree ... Any Intrusion into this zone is usually accompanied by significant injury to
8    roots further from the trunk; this will shorten the useful life of the tree in the
   developed area by reducing vigor and introducing root disease. Furthermore, damage
9    to any structural roots may cause an already structurally compromised tree to become
   hazardous.

10

11    43.    Because of the renown and iconic status of Richardson Grove, the Project's influence

12  extends well beyond its borders, exposing a state and national public treasure to risk of harm.

13  Because the Richardson Grove Project is intended to provide STAA trucks with new access through

14  the Grove solely for "goods movement," and because Richardson Grove is treasured by visitors from

15  throughout California and the nation, this Project has impacts extending well beyond Humboldt

16  County. The Richardson Grove Project as designed will result in a devastating legacy.

17  **C.    Threatened by Trucks**

18    44.    The Richardson Grove Project will widen Highway 101 through Richardson Grove

19  State Park by increasing the width of paved road in both directions and widening shoulders along

20  the side of the highway, to change curve radii along a one mile section. The Richardson Grove

21  Project will include installation of a retaining wall outside of the Park on the north to allow the road

22  widening, excavating 20 feet down and placing a retainer wall closer to and above the Eel Wild and

23  Scenic River.

24    45.    To accomplish this road widening and realignment, Caltrans will remove 54 trees and

25  work within and impact the roots and root zones of 87 trees. Many of these trees are old growth

26  Redwoods, as large as 18 feet in diameter, located immediately adjacent to the Highway. The

27  following photos vividly depict how close the Redwoods are to Highway 101 in the Grove and how

28  dangerous the road widening Project will be to these trees:

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

1      46.     The Richardson Grove Project will also entail ground disturbance, slope excavation,

2 culvert work, excavation and movement of lead-contaminated soils, potential temporary stream

3 diversion, night work with night lighting, disposal/barrow sites, equipment staging areas, permanent

4 right-of-way acquisitions from State Parks and private landowners, temporary construction

5 easements, and vegetation and tree removal.

6      47.     Beneficiaries of the Project include corporate giants whose trucks will make

7 expedited deliveries to Humboldt County. Caltrans' stated justification for widening Highway 101

8 through the Grove is that the road must be wider to allow Surface Transportation Administration Act

9 ("STAA") trucks to pass one another in opposite directions on this section of the highway. So-called

10 STAA trucks are truck-and-trailer combinations that tend to be somewhat longer than the "California

11 legal" truck-and-trailer combination.

12      48.     Caltrans has specifically stated that **the Richardson Grove Project "is not a safety**

13 **project."** (Emphasis added.)

14      49.     Specifically, Caltrans maintains it is necessary to widen the highway through

15 Richardson Grove and change the highway's alignment to prevent these STAA trucks from

16 "off-tracking." "Off-tracking" refers to a phenomena in which a truck's rear tires may follow a

17 shorter path than the front tires when turning.

18      50.     However, some STAA trucks are currently allowed through the Richardson Grove.

19 Caltrans cites no evidence in its Draft Environmental Assessment ("Draft EA") (defined below) or

20 EA/FONSI indicating that these STAA trucks are unable to safely pass in opposite directions.

21 Similarly, Caltrans cites to no evidence in its Draft EA or EA/FONSI indicating that in practice any

22 STAA trucks are off-tracking when traveling through the Richardson Grove.

23      51.     In its Draft EA, Caltrans cited information showing that over the most recent five-year

24 period only six accidents occurred involving trucks in the Richardson Grove Project area, and two

25 of those were within one minute of each other. Moreover, only one of these accidents involved trucks

26 traveling opposite directions, and there is no evidence that these trucks were STAA trucks.

27      52.     Indeed, there is no evidence that any of these six accidents involved STAA trucks.

28 According to a California Highway Patrol report in existence at the time of the EA, there is **_no_**

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

17

1   ***record*** of any collisions, citations, verbal warnings or even complaints involving STAA trucks

2   traveling through the Richardson Grove.

3       53.    In response to the absence of such evidence, Caltrans created a computer model to

4   show how these non-existent accidents *might possibly* happen. According to Caltrans, this computer

5   model purportedly demonstrates "where the deficiencies [in the current design of the highway] were

6   that would cause off-tracking."

7       54.    Given the lack of <u>any</u> evidence of off-tracking for STAA trucks in the Richardson

8   Grove, there is no reason to use a computer model to show that the current design "***would***" cause

9   off-tracking.

10       55.    Caltrans, however, did not provide any information clarifying this apparent

11   discrepancy.   In fact, Caltrans never disclosed to the public any information used to develop the

12   computer model—information which also formed the basis for the Richardson Grove Project design.

13   Caltrans never provided basic information, such as curve radii, length of curves, shoulder width,

14   existing geometrics, elevations, or the engineering used to develop the Richardson Grove Project's

15   computer model.

16       56.    In doing so, Caltrans deprived the public of any meaningful opportunity to evaluate

17   and critique not only the very nature and impacts of the Richardson Grove Project, but also whether

18   the Richardson Grove Project as designed would accomplish what Caltrans sought to achieve.

19       57.    Caltrans' failure to identify the data used in its Richardson Grove Project model also

20   deprived the public of an opportunity to investigate better alternatives to the Richardson Grove

21   Project.

22       58.    Because this Richardson Grove Project intends to use State Parks land, Caltrans was

23   obligated to conduct a federal Department of Transportation Section 4(f) analysis. Section 4(f) bars

24   the use of parklands for transportation projects absent exceptional circumstances which, among other

25   things, require Caltrans to demonstrate there are no prudent and feasible alternatives to the

26   Richardson Grove Project and that all possible planning measures to minimize harm to Richardson

27   Grove State Park have been considered. Caltrans did <u>not</u> meet these obligations.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

18

1    59.    Ultimately, in fact, Caltrans conceded the safety problems purportedly found by its
2  model "cannot be improved within the scope of the proposed project." Caltrans conceded that the
3  Richardson Grove Project failed to bring the stretch of Highway 101 through Richardson Grove up
4  to standards it purportedly identified as currently deficient, including: minimum design speed and
5  curve radii, shoulder width, minimum super-elevation rate, stopping site distance, minimum distance
6  to fixed objects, and corner sight distance.

7    60.    Not surprisingly, by the time Caltrans released the EA/FONSI, it conceded the
8  Richardson Grove Project was not about safety at all: "The project is not a safety project, but an
9  operational improvement project to lift the STAA restriction at this location." "Improved safety is
10  a secondary objective to this project." Thus, it had to disclose that the primary purpose of the Project
11  was to provide access through the Grove for STAA trucks to come barreling through: "The primary
12  purpose of the Project is to lift the restriction on STAA vehicles on the portion" of Highway 101 that
13  runs through Richardson Grove State Park.

14  **D.    Caltrans Failed to Properly Provide for Public Review**

15    61.    In early 2007 Caltrans initiated a "Richardson Grove Goods Movement Feasibility
16  Study" (the "2007 Study"), which was intended to design a cooperative realignment plan to improve
17  the movement of goods in and out of Humboldt County. The purpose of the 2007 Study was to
18  develop and consider alternative ways of providing safe and economically feasible goods movement,
19  including increased access by STAA trucks. STAA truck access is currently allowed by statute for
20  livestock trucks and moving vans on Highway 101 through Richardson Grove State Park, but is
21  otherwise prohibited.

22    62.    Caltrans abandoned development of the 2007 Study in favor of computer modeling
23  for STAA access through the Richardson Grove. The computer software developed conceptual
24  designs using truck turning templates specific to the STAA truck type.

25    63.    On July 26, 2007, Caltrans issued a press release announcing that the movement of
26  goods through Richardson Grove would be "dramatically improved" under a realignment plan
27  developed by Caltrans. Caltrans apparently consulted regional government representatives from
28  Humboldt, Del Norte, and Mendocino counties, and State and federal legislators in the development

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

19

1   of this realignment plan, but did not disclose or provide an opportunity for public review and input
2   on the proposed road and alignment.

3       64.     Caltrans then held two "open house" public meetings on September 26, 2007 and on
4   February 20, 2008, at which Caltrans made no formal presentation, but rather displayed maps and
5   exhibits for review, and took questions. Caltrans conducted a scoping meeting on May 14, 2008,
6   and again made no formal presentations but took questions and comments. Caltrans received a
7   flood of scoping comments, urging it to consider reasonable and feasible alternatives to any widening
8   that could impact the ancient Redwoods and the fish and wildlife habitat, and to ensure that the full
9   scope of STAA access projects in Humboldt, Mendocino, and Del Norte counties be fully evaluated
10  as related projects with cumulative and growth-inducing effects.

11  **E.    Caltrans' EA Was Deficient**

12      65.     In early December 2008, Caltrans issued its Draft Environmental Impact
13  Report/Environmental Assessment and Programmatic Section 4(f) evaluation ("Draft EA"). The
14  public comment period was scheduled to close on January 29, 2009, but because Caltrans had failed
15  to notice the preparation of the Draft EA to the California State Clearinghouse, public comments
16  were accepted until March 12, 2009. Caltrans conducted a public hearing on the Draft EA on
17  December 15, 2008. Caltrans received more than **800** comments in opposition to the Richardson
18  Grove Project and its Draft EA.

19      66.     Caltrans' Draft EA was dramatically deficient. In particular, the Draft EA lacked data
20  and information necessary to evaluate the impact of the Richardson Grove Project to State Park
21  resources, its significant and cumulative effects particularly in relation to its purpose and need, the
22  existence of feasible alternatives to the Richardson Grove Project, and the viability of the proposed
23  mitigation measures. The Richardson Grove Project description lacked the most basic information
24  necessary to review the Richardson Grove Project, including not only the engineering, curve, and
25  design criteria used to create the Richardson Grove Project, but also any identification of the State
26  Park land to be acquired. The Richardson Grove Project plans were largely unreadable and failed
27  to present the most basic details concerning cut and fill, easements, and the proposed retaining wall.
28  Caltrans did not provide diagrams depicting root structure zones of the Redwoods, maps of

1 independently proposed bicycle routes, or the location of right-of-ways to be acquired or relinquished
2 by State Parks. In this way, Caltrans failed to provide the required Richardson Grove Project
3 description to enable the public to understand and critique how the proposed changes to Highway
4 101 might affect Richardson Grove.

5 67. The statement of project purpose and need in the Draft EA failed to provide a clear
6 and consistent statement of the objectives that the Project is intended to achieve. For example,
7 although Caltrans initially informed the public that the purpose of the Project was to enhance safety,
8 it changed tack during the environmental review process, and ultimately concluded that the Project
9 is not a safety project. Moreover, even though Caltrans stated in the Draft EA that the Project would
10 enhance goods movement by opening Richardson Grove to STAA trucks, it simultaneously
11 concluded that the economic impacts of the Project on Humboldt County businesses and trucking
12 firms would be negligible. The Draft EA thus raised serious questions as to whether the Project
13 would accomplish *any* of Caltrans' stated purposes. The statement of project purpose and need in
14 the Draft EA was not well-established, not well-defined, and not well-justified.

15 68. Alternatively, the Project purpose and need as ultimately defined in the Draft EA –
16 opening Richardson Grove to large trucks – was so narrowly stated as to preclude meaningful
17 analysis of a range of reasonable alternatives.

18 69. As the comments on the Draft EA repeatedly pointed out, Caltrans failed to identify
19 and adequately evaluate the Richardson Grove Project's significant environmental impacts,
20 including: effects on the ancient Redwood trees adjacent to the highway throughout the Richardson
21 Grove Project site; effects on protected fish and wildlife species and other biological resources, not
22 only from tree damage and removal but also from increased noise and light during and after
23 construction and from release and disposal of toxic materials; greenhouse gas emissions; and the
24 cumulative and growth-inducing effects associated with expanding STAA truck access and goods
25 movement throughout Humboldt, Mendocino, and Del Norte counties.

26 70. The Draft EA failed to provide, for example, documentation and analysis about how
27 the Richardson Grove Project would increase or decrease the cumulative amount of hardened surface
28 on the critical structural root zones of the Redwoods, which for many trees extend several feet on

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

21

1 either side of the road. The Draft EA failed to evaluate the effects of constructing the Richardson
2 Grove Project and altering the road's drainage pattern on water transport and availability to the
3 old-growth Redwoods. In fact, the Draft EA merely listed 41 trees as having "potential tree root
4 effects," yet failed to provide an assessment of the number of these trees that would have their
5 structural root zone compromised through placement of impervious surface, fill, and/or cutting of
6 their roots.

7     71.   Roots are the life lines of the Redwood tree. Any disturbance of the roots can threaten
8 a tree's health and longevity. Redwoods breathe through their roots, requiring soil that is loose
9 enough to allow ample air flow and nutrients underground. Roots act as a conveyance and storage
10 system for water and nutrients. Roots also serve as the structural system for entire groves of
11 Redwoods. Redwoods lack a deep tap root, and instead rely on a dense and far-reaching network
12 of shallow, interconnected roots for mutual stability, forming symbiotic root systems among groves.
13 Soil compaction and fill disrupt the respiration process, effectively cutting off air to these trees. The
14 Richardson Grove Project will sever Redwood roots, and soil compaction will be unavoidable as the
15 combined effects of construction, roadbed material, and an increase in paved surfaces adjacent to the
16 road threaten to devastate these trees. The proposed root cutting may significantly impact the
17 nutrient and water acquisition of the trees, reduce their stability, and inhibit asexual reproduction
18 through stump sprouting. Even Caltrans acknowledges that "[i]t is not possible to know where roots
19 may be encountered."

20     72.   The Draft EA failed to properly disclose and analyze construction impacts on tourism
21 and park visitors, particularly in terms of increased noise and light associated with nighttime work
22 and the summer construction phases. The Draft EA did not evaluate whether the road widening will
23 result in a degraded park experience for future park visitors, given the removal of understory
24 vegetation, increased exposure to the highway in areas of tree removal, and increased noise and light
25 impacts as a result of these changes. In many respects, the Draft EA made sweeping, conclusory
26 statements that the Richardson Grove Project's environmental effects would not be significant,
27 without providing any criteria or meaningful explanation why, for example, the Richardson Grove

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

22

1  Project would not diminish State Park values and resources for those millions of travelers who pass
2  through.

3      73.     While proposing the Richardson Grove Project to advance the economic interests of
4  a small group of businesses, including large non-local companies, the Draft EA failed to identify and
5  evaluate the related impacts associated with this purpose, including any negative economic impacts
6  to tourism, the cumulative effects associated with other STAA access projects Caltrans is
7  undertaking in northern Humboldt and adjacent counties, and any growth-inducing impacts.

8      74.     The Draft EA failed to consider and evaluate feasible alternatives to the Richardson
9  Grove Project that would achieve the purpose behind the Project, and yet not expose public resources
10  to environmental risk, including slowing the speed through the Grove or providing alternative
11  transportation measures. Caltrans did not document an examination of all prudent and feasible
12  alternatives and all possible planning measures to minimize harm to Richardson Grove.

13      75.     The Draft EA failed to provide adequate mitigation measures for most of these and
14  other impacts. The limited planning and mitigation measures that were identified were improperly
15  deferred, ineffective, unenforceable, and vague. For example, Caltrans failed to provide technical
16  reports or other documentation to demonstrate that the ancient Redwood trees, biological resources,
17  and other State Park resources would be fully and adequately protected from impact. Caltrans also
18  failed to conduct any field studies or surveys for the federally protected Marbled Murrelet and the
19  Northern Spotted Owl, despite recognition that the Richardson Grove Project "may affect, and is
20  likely to adversely affect" these species. Caltrans admits construction night lighting "could affect
21  Northern spotted owls." Instead, Caltrans deferred collection of data essential to analysis of these
22  effects until *after* implementation of the Richardson Grove Project.

23      76.     The Draft EA thus indicated that the Project may have a significant effect on the
24  environment. At the very least, the Draft EA's inconsistencies and other failures raised a substantial
25  question as to whether the Project may have a significant effect on the environment.

26  **F.     The EA/FONSI Fails to Remedy the EA's Deficiencies**

27      77.     After the close of public comment, Caltrans developed additional data about the
28  Richardson Grove Project, including facts and information, changes, and evaluation that had not

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

23

1  been provided in the EA. On May 18, 2010, more than a year after the close of public comment on
2  the Draft EA, Caltrans released the Richardson Grove Project's Final Environmental Impact
3  Report/Environmental Assessment and Programmatic Section 4(f) Evaluation ("EA/FONSI"). On
4  the same date, Caltrans approved the Richardson Grove Project with no further opportunity for
5  public review or input.

6       78.    Despite information in the Draft EA indicating that the Project as proposed may have
7  a significant effect on the environment, or at the very least raising a substantial question as to
8  whether the Project may have a significant effect on the environment, Caltrans failed to prepare an
9  Environmental Impact Statement for the Project as NEPA requires. Instead, Caltrans adopted the
10 EA/FONSI.

11      79.    The EA/FONSI fails to remedy the Draft EA's dramatic deficiencies. Rather than do
12 as hundreds of comments requested and provide the public with an opportunity to review a revised
13 environmental analysis that corrected the Draft EA's extensive informational and analytical errors
14 and omissions, Caltrans simply certified the EA/FONSI and immediately approved the Richardson
15 Grove Project. The public had no opportunity to review and comment on the EA/FONSI and the new
16 information and analysis Caltrans included therein. In this way, Caltrans' process deprived the public
17 of its opportunity to review the Richardson Grove Project's purpose and need, its significant
18 environmental effects, proposed alternatives and mitigation measures, and the information relied
19 upon by Caltrans to approve the Richardson Grove Project.

20      80.    Notably, the EA/FONSI does not remedy many of the informational and analytical
21 deficiencies found in the Draft EA, including its failure to provide a legally sufficient statement of
22 purpose and need for the Project, an adequate project description and project plans, an evaluation
23 of significant environmental effects, a sufficient cumulative impact analysis and evaluation of growth
24 inducing impacts, technical studies and documentation to support conclusions that impacts will be
25 less than significant, an adequate analysis of feasible and prudent alternatives, and identification of
26 enforceable and effective mitigation measures.

27      81.    Caltrans also significantly changed the Richardson Grove Project in the EA/FONSI
28 from what was described in the Draft EA and made available for public review. After close of public

1  comment, and with no opportunity for review by the public or other agencies, Caltrans added an
2  additional 46 trees to the original 41 trees identified in the Draft EA as having potential root impacts.
3  Most of these trees are large Redwoods; 73 are 30 inches or greater in diameter (the standard
4  Caltrans uses to define "old-growth"), and 40 are between 7 and 18 feet in diameter. According to
5  the EA/FONSI, "[c]onstruction activities in close proximity to these trees could result in impacts to
6  the root systems. There would be both cut and fill activities occurring within the structural root zone.
7  The maximum depth of excavation would be approximately two feet and the maximum fill depth
8  would be approximately three and a half feet." (EA/FONSI pp. 40-41.) The EA/FONSI identifies
9  68 of the 87 total trees that will have cut and fill activities within their root zone, but does not
10 provide any technical study or documentation assessing how these trees would have their structural
11 root zone compromised through placement of impervious surface, fill, or cutting of their roots.
12 Caltrans acknowledges in the EA/FONSI that "it may not be possible to avoid cutting roots greater
13 than two inches." Caltrans also admits that it did not conduct any field studies of the Redwood trees'
14 structural root systems affected by this Richardson Grove Project, and does not know where roots
15 may be encountered. Thus, Caltrans by its own admission does not know what the ultimate effects
16 of the Richardson Grove Project will be on the Redwoods or the root systems.

17      82.     Caltrans proposes to protect these trees by using an air spade to dig up roots, adding
18 brow logs to minimize the impact of fill on the trunks of the trees, and watering the trees weekly
19 once excavation below the finish grade occurs. Caltrans also proposes increasing the removal of
20 invasive plants as a mitigation measure to offset impacts to these mature Redwood trees where
21 construction occurs within their structural root zone. However, the EA/FONSI fails to provide any
22 documentation to establish now these measures or other measures would be effective and sufficient
23 to protect these trees from harm, or to supply sufficient support, water and nutrients to meet their
24 demands. The EA/FONSI fails to provide adequate detail to assess the Richardson Grove Project's
25 impacts on the Redwoods and their root systems. Nor did Caltrans provide at the time of approval
26 a mitigation monitoring plan to establish that the mitigation measures it did identify would be
27 implemented and properly reported. The EA/FONSI never adequately addresses widespread concern

28

**COMPLAINT**

25

1  that the proposed Richardson Grove Project will eventually cause tree mortality along the highway
2  and within the Grove.

3  83.    Caltrans also significantly altered the scope of the Richardson Grove Project after
4  issuance of the Draft EA by relocating the retaining wall from one side of Highway 101 to the other,
5  and placing it downslope to provide for the widening and placement of the road in the northen
6  section of the Richardson Grove Project. Because of this change, Caltrans was obligated to, but did
7  not, submit this change to the federal-river administering agency, the National Park Service, for
8  Section 7 consultation under the Wild and Scenic River Act. The EA/FONSI failed to provide any
9  information or analysis about the significant environmental effects related to this relocation,
10  particularly in terms of geology, soils, plants, trees, and other biological and natural resources, and
11  impacts on the Eel Wild and Scenic River. These changes to the Richardson Grove Project were
12  made without any opportunity for the public or other agencies to review and comment upon them.

13  84.    Caltrans also revised its plans for the Richardson Grove Project after issuance of the
14  Draft EA to include deeper excavation in areas with lead-contaminated soils. Yet, the EA/FONSI
15  failed to disclose or analyze whether removal and disposal of these soils—which Caltrans proposes
16  to stockpile in a roadside area that ultimately drains to the South Fork of the Eel River—would
17  comply with hazardous materials handling laws or pose any risk of significant impacts to water
18  quality, aquatic species, or public health.

19  85.    Other changes to the EA/FONSI included: new but still fundamentally contradictory
20  information concerning whether the Richardson Grove Project would fulfill its purpose and need and
21  whether the Richardson Grove Project would induce significant growth or development elsewhere
22  in Humboldt County; new but still internally inconsistent and contradictory information about the
23  increase in impervious area resulting from the Richardson Grove Project; a new mitigation
24  measure—removal of an unused restroom in the State Park—the impacts and effectiveness of which
25  were not properly disclosed or analyzed; changes in the proposed method of culvert replacement
26  (from a cast-in-place resin liner to full culvert replacement), without any discussion or analysis of
27  the potential environmental impacts of these changes; new but impermissibly deferred mitigation
28  measures for impacts to water quality; new information concerning the United States Fish and

1  Wildlife Service's "Biological Opinion" finding that the Richardson Grove Project would "adversely
2  affect" and result in "harassment" of federally protected species, without any revision to the
3  EA/FONSI's conclusion that the Richardson Grove Project would have no significant effects on
4  listed wildlife; new, internally inconsistent, and contradictory information about impacts associated
5  with night-time construction; and a new but still fundamentally deficient discussion of the
6  cumulative impacts of the Richardson Grove Project in relation to other past, present, and reasonably
7  foreseeable future projects affecting old-growth Redwood forests.

8      86.     The EA/FONSI included responses to comments, which were deficient in their failure
9  to identify and respond to all comments and concerns raised, as required by NEPA. The numerous
10  changes to the EA/FONSI failed to provide the public with sufficient information to permit members
11  of the public to weigh in on the Project and inform decision-makers of their concerns.

12      87.     The EA/FONSI, as revised by Caltrans, demonstrates that the Project may have a
13  significant impact on the environment. At the very least, the EA/FONSI, in combination with
14  Caltrans' response to public comments and other information in the record, raises a substantial
15  question as to whether the Project may have a significant impact on the environment.

16      88.     Caltrans issued its Finding of No Significant Impact and decision on May 18, 2010,
17  and filed a notice of decision with the California State Clearinghouse pursuant to California state law
18  on May 19, 2010. This action is timely filed.

19              **VII. PLAINTIFFS HAVE COMPLIED WITH**

20              **ALL PROCEDURAL REQUIREMENTS**

21  **A.      Irreparable Harm and Arbitrary and Capricious Action**

22      89.     At all times mentioned herein, Caltrans has been able to deny the approvals and reject
23  certification of the EA/FONSI for the Richardson Grove Project. Notwithstanding such ability,
24  Caltrans has failed and continues to fail to perform its duty to deny and reject the Richardson Grove
25  Project.

26      90.     If Caltrans is not ordered to withdraw its approval of the Richardson Grove Project
27  and the EA/FONSI, the People of California, as well as the land, watershed, wildlife, economic and

28

❷
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

27

1  environmental values subject to and affected by the Richardson Grove Project, will suffer immediate,

2  irreparable, and permanent damage.

3  91.  Plaintiffs bring this action on the ground that each individual Plaintiff, and each

4  organizational Plaintiff's members and staff will suffer irreparable injuries if Defendants' actions

5  herein are not set aside immediately.  Such injuries include, but are not limited to, injuries to

6  Plaintiffs' aesthetic, spiritual, scientific, recreational, and educational interests caused by

7  deterioration of protected State Park land and its environmental setting, damage to ancient Redwood

8  Groves protected within the State Park, degradation of wildlife and fisheries habitat, including for

9  the Marbled Murrelet, the Northern Spotted Owl, and anadromous salmonids, impacts associated

10 with noise and light, impacts associated with toxic materials handling and disposal, and impacts to

11 air quality, and impacts to the designated wild and scenic Eel River.

12 **B.  Exhaustion of Administrative Remedies**

13 92.  Plaintiffs through their representatives and members have performed all conditions

14 precedent to the filing of this Complaint by raising each and every issue known to them before

15 Caltrans in compliance with NEPA the Department of Transportation Act, the Wild and Scenic

16 Rivers Act, and the APA,  including by participating in the public meetings and hearings hosted by

17 Caltrans and submitting written comments.  Plaintiffs, however, do not believe they are required to

18 exhaust their administrative remedies, because to attempt to do so would be futile, because Plaintiffs

19 do not have adequate administrative remedies, and/or because Plaintiffs lacked a full and fair

20 opportunity to exhaust certain claims.

21 93.  On the same day as the filing of this action, Plaintiffs are serving by mail a copy of

22 the filed Complaint on the California State Attorney General.

23 **C.  Standing**

24 94.  Plaintiffs are individuals, groups of citizens, taxpayers, and residents of the State of

25 California. Plaintiffs have participated in the review of the Richardson Grove Project.  Individual

26 Plaintiffs, and organizational Plaintiffs' members and staff, visit and rely on the natural and other

27 resources of the Richardson Grove Park for their economic livelihood, enjoyment, recreation,

28 education, and spiritual experiences.  Plaintiffs' interests will be concretely and particularly injured

1 by the effects of the proposed Richardson Grove Project on the environment. Individual Plaintiffs
2 have standing to bring this action on their own behalf, and organizational Plaintiffs have standing
3 to bring this action on behalf of their injured members and staff.

**D.    Attorneys Fees**

5       95.    In pursuing this action, Plaintiffs are entitled to their reasonable fees, costs and
6 expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. 2412.

## VIII.  CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Violation of NEPA)

10      96.    Plaintiffs incorporate by reference all the allegations contained in the previous
11 paragraphs as though fully set forth herein.

12      97.    NEPA establishes a national policy to "prevent or eliminate damage to the
13 environment and biosphere." 42 U.S.C § 4321. NEPA recognizes that "the critical importance of
14 restoring and maintaining environmental quality," declares that the federal government has a
15 continuing responsibility to use "all practicable means" to minimize environmental degradation, and
16 directs that "to the fullest extent possible ... the policies, regulations and public laws of the United
17 States shall be interpreted and administered in accordance with the policies set forth in this Act."
18 42 U.S.C. §§ 4331(a), 4332(1). NEPA also recognizes the right of each person to enjoy a healthful
19 environment.  42 U.S.C. § 4331(c).  Pursuant to the MOU, Caltrans assumed the obligation to
20 comply with NEPA for highway projects, including the Richardson Grove Project.

21      98.    NEPA Regulations for Implementing the Procedural Provisions of the National
22 Environmental Policy Act are codified at 40 C.F.R. § 1500 *et seq*.    The Federal Highway
23 Administration has adopted its own NEPA regulations, which are codified at 23 C.F.R. Part 771.
24 These are binding on all agencies which must comply with NEPA, including Caltrans pursuant to
25 the MOU assigning it the obligation to comply with NEPA for highway projects, including the
26 Richardson Grove Project.

27      99.    Caltrans has violated these fundamental principles of NEPA in several ways,
28 including by not limited to, failing to establish the purpose and need for the Project, disclose and

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

29

1  evaluate the significant environmental effects, explore and evaluate reasonable alternatives to the

2  Project, adequately document public comments and concerns and responses to those comments, and

3  failing to prepare an Environmental Impact Statement ("EIS") for the Richardson Grove Project.

4  WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

5  **SECOND CLAIM FOR RELIEF**

6  **(Violation of NEPA - Purpose and Need)**

7  100.    Plaintiffs incorporate by reference all the allegations contained in the previous

8  paragraphs as though fully set forth herein.

9  101.    NEPA requires that the agency to establish a statement of purpose and need for the

10  proposed action under review. 23 U.S.C. § 139(f); 40 C.F.R. §§ 1508.9(b), 1502.13.

11  102.    Caltrans violated NEPA by failing to provide a valid discussion or document in the

12  EA/FONSI the purpose and need of the Richardson Grove Project, by among things, failing to (1)

13  present an adequate description of the proposed action, (2) present a clear statement of the objectives

14  that the Project is intended to achieve, including evidence of safety concerns, (3) document that the

15  Project was necessary in the absence of safety issues, and (4) involve the public adequately in

16  defining the ultimate purpose and need for the Project. Caltrans' failure to provide a clear statement

17  of the purpose of the proposed action included, but was not limited to, its failure to adequately

18  disclose key components of the Richardson Grove Project such as the engineering and design criteria

19  used to develop and define the Richardson Grove Project, information about and location of tree root

20  structures within the Richardson Grove Project area, the acquisition criteria for State Park lands, and

21  the interrelationships among the Richardson Grove Project and other Caltrans STAA truck access

22  projects in Northern California.

23  103.    In the alternative, by jettisoning the original safety rationale for the Project, and by

24  adopting a project purpose focused solely on STAA truck access, Caltrans improperly defined the

25  Project's purpose and need so narrowly as to preclude analysis of a reasonable range of alternatives

26  that would avoid significant environmental impacts.

27  WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

30

1          **THIRD CLAIM FOR RELIEF**

2          **(Violation of NEPA - Failure to Evaluate Impacts)**

3          104.    Plaintiffs incorporate by reference all the allegations contained in the previous

4    paragraphs as though fully set forth herein.

5          105.    NEPA requires Caltrans to adequately consider, analyze, and disclose the individual

6    and cumulative environmental impacts of the proposed action and alternatives to it. 42 U.S.C. §

7    4332(2)(c); 23 C.F.R. §§ 771.105, 771.119; 40 C.F.R. §§ 1508.9, 1502.16.

8          106.    Caltrans violated NEPA by issuing and approving the EA/FONSI which fails to

9    provide the required analysis of individual and cumulative environmental effects of the Richardson

10   Grove Project, including but not limited to, the effects:

11                 a.    on the ancient Redwood trees which stand in close proximity to the highway

12                       throughout the Richardson Grove Project site,

13                 b.    on fish and wildlife species and other biological resources, including special

14                       status threatened and endangered species such as the Marbled Murrelet and the

15                       Northern Spotted Owl,

16                 c.    from tree removal,

17                 d.    from increased noise and light (particularly nighttime light) during and after

18                       construction,

19                 e.    from toxicity to the environment, including from the movement and storage of

20                       lead-contaminated soil and other toxic materials,

21                 f.    on greenhouse gas emissions,

22                 g.    on cultural resources,

23                 h.    on park, recreation, wildlife or historic areas, and changes to vehicular and

24                       pedestrian access, and

25                 i.    from the growth-inducing effects or opportunities associated with advancing

26                       goods movement throughout Humboldt, Mendocino and Del Norte counties.

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

31

102. Caltrans also violated NEPA because the Richardson Grove Project's EA/FONSI failed to adequately identify and discuss cumulative impacts related to the Richardson Grove Project, including but not limited to:

    a.    the impacts associated with logging of Redwoods and other trees in the area,

    b.    the cumulative effects on wildlife and protected species from removing trees and opening the forest along Highway 101,

    c.    the traffic and its related noise and air quality impacts in the City of Eureka and other areas of Humboldt County from STAA trucks,

    d.    proposed development projects and Humboldt Bay port development which require STAA truck access, and

    e.    increased truck traffic associated with other Caltrans STAA access projects designed to create a STAA loop from the Del Norte County in the north to the Richardson Grove State Park in the south.

103. Caltrans violated NEPA by issuing a Draft EA which was fundamentally and dramatically deficient, as noted by numerous comments, including those by the California Department of Parks and Recreation, California State Parks Foundation, Natural Resources Defense Council, EPIC, CATs, and many others. These comments repeatedly stated that in the absence of legally required information and analysis concerning the Richardson Grove Project, the public could not evaluate the Project's potential for impacts, including impacts to the State Park, the ancient Redwoods within Richardson Grove, and other resources. Caltrans' Draft EA was so deficient it rendered public comment effectively meaningless, in violation of NEPA requirements to provide members of the public with sufficient environmental information to permit them to weigh in and to inform agency decision-making.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1

**FOURTH CLAIM FOR RELIEF**

2

**(Violation of NEPA - Failure to Evaluate Alternatives)**

3      104.   Plaintiffs incorporate by reference all the allegations contained in the previous

4   paragraphs as though fully set forth herein.

5      105.   NEPA requires that agencies rigorously explore and objectively evaluate all

6   reasonable alternatives to the proposed action. 42 U.S.C. § 4332(2)(C)(iii); 23 C.F.R § 771.105; 40

7   C.F.R. §§ 1508.9, 1502.14. A proper analysis of alternatives requires appropriate mitigation

8   measures not already included in the proposed action or alternatives. *See* 23 C.F.R. § 771.119(b);

9   40 C.F.R § 1502.14(f).

10     106.   Caltrans violated NEPA because the EA/FONSI contains an inadequate range of

11   alternatives. Among other reasonable alternatives, Caltrans failed to consider reasonable alternatives

12   that would reduce the significant adverse environmental effects of the Richardson Grove Project,

13   including but not limited to:

14              a.   an alternative to altering and cutting roots and compacting the root systems

15                   of ancient Redwood trees averaging more than seven feet in diameter,

16              b.   changing the Richardson Grove Project design to avoid certain Redwood

17                   trees,

18              c.   reducing the speed limit through the Grove in light of the fact that certain

19                   STAA trucks are already permitted to travel through the Grove and there is

20                   no evidence of safety impacts related to such transport, and

21              d.   providing uniform STAA truck access without disturbing the existing road

22                   through the Richardson Grove State Park.

23     107.   Caltrans also violated NEPA by failing to provide the required appropriate mitigation

24   measures, including but not limited to measures that will:

25              a.   protect the ancient Redwood trees and their root systems,

26              b.   not touch any Redwoods or their root systems within the Richardson Grove

27                   State Park that are 30 inches or larger in diameter,

28              c.   not allow any roots of Redwoods to be cut,

⊕
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

33

d.   document the presence or absence of protected species and other biological resources and fully analyze the potential significant environmental effects associated with the Richardson Grove Project before the Richardson Grove Project commences,

e.   avoid impacts to cultural resources, and

f.   avoid impacts associated with excavation, handling, and disposal of lead-laden soils.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FIFTH CLAIM FOR RELIEF

### (Violation of NEPA - Response to Comments)

108.   Plaintiffs incorporate by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

109.   NEPA requires that the agency present and respond to comments for a proposed major federal action significantly affecting the quality of the human environment. 40 C.F.R. § 1503.2. The Richardson Grove Project is a major federal action significantly affecting the quality of the human environment.

110.   Numerous comments submitted to Caltrans throughout the environmental review process identified the Richardson Grove Project's significant impacts. Yet, Caltrans either ignored these comments or glossed over their substance with conclusory responses. Due to Caltrans' disregard, the Richardson Grove Project's identified potential impacts related to ancient Redwoods, fish and wildlife, water quality, air quality, cultural resources, toxic materials, and plant populations, as well as its cumulative impacts, must therefore still be considered significant. Caltrans has not successfully mitigated the impacts of the Richardson Grove Project in the manner or to the extent required by law.

111.   Caltrans violated NEPA by failing to document and respond to comments regarding:

a.   the Project purpose and need,

b.   the Project description,


LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1    c. Project impacts related to ancient Redwoods, traffic, noise, light, water

2      quality, air quality, cultural resources, toxic materials, protected species,

3      and growth inducement,

4    d. the lack of adequate study and documentation to support the EA/FONSI,

5    e. the inadequate Section 4(f) analysis,

6    f. the lack of a valid and adequate public review and comment process,

7    g. the need for reissuance and recirculation of the EA because of its

8      inconsistencies and lack of disclosure and analysis, and

9    h. the lack of response to scientific data and evidence submitted.

10  WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

11          **SIXTH CLAIM FOR RELIEF**

12   **(Violation of NEPA - Failure to Circulate EA Prior to Adoption of FONSI)**

13  112. Plaintiffs incorporate by reference all the allegations contained in the previous

14 paragraphs as though fully set forth herein.

15  113. Under certain circumstances, NEPA requires that an EA must be available to the

16 public for a minimum of 30 days before the finding of no significant impact is made and the action

17 is approved. 40 C.F.R. §§ 1505.1, 1501.4(e)(2).

18  114. This Project, due to its significant effects on the environment, is the type of project

19 that normally would require an EIS. This Project also is without precedent, in that it involves

20 widening and realigning a state highway through an ancient Redwood grove, in a popular California

21 State Park, in a manner that could damage the root systems of the ancient trees and degrade park

22 resources. Accordingly, Caltrans was required to make the EA available for 30 days prior to

23 adoption of a FONSI pursuant to 40 C.F.R. § 1501.4(e)(2)(i) and (ii).

24  115. Caltrans also violated NEPA by failing to provide the required 30-day public review

25 period for the EA/FONSI, which included substantial new impacts, and increased the severity of

26 existing impacts from the Richardson Grove Project, in a manner that significantly altered the scope

27 of the Project's impacts without providing effective mitigation. These include, but are not limited

28 to:

1            a.    more than doubling the number of trees, averaging 7 feet in diameter, whose

2                structural root zone will be impacted by the Richardson Grove Project,

3            b.    changing the location and nature of the retaining wall to now serve as roadbed,

4                without providing any analysis or mitigation for that change or engaging

5                Section 7 consultation under the Wild and Scenic Rivers Act,

6            c.    proposing as a new mitigation measure the removal of a State Park restroom

7                without any analysis of the impacts of implementing this measure, and

8            d.    proposing new methods of culvert replacement without any analysis of the

9                impacts of the change.

10   WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

11   **SEVENTH CLAIM FOR RELIEF**

12   **(Violation of NEPA - Failure to Prepare an EIS)**

13   116.    Plaintiffs incorporate by reference all the allegations contained in the previous

14   paragraphs as though fully set forth herein.

15   117.    NEPA requires all agencies to prepare a detailed environmental impact statement

16   ("EIS") on every proposal for a major federal action significantly affecting the quality of the human

17   environment. 42 U.S.C. § 4322(2)(c). Under NEPA, an agency must prepare an EIS when an action

18   *may* have a significant environmental effect, 40 C.F.R. § 1508.3, or where there is a substantial

19   question raised as to whether an action may have an environmental effect. The EIS must contain a

20   detailed discussion of environmental impacts, 40 C.F.R. §1502.16, and of alternatives. 40 C.F.R.

21   § 1502.14.

22   118.    The Richardson Grove Project is a major federal action significantly affecting the

23   quality of the human environment for which Caltrans must prepare an EIS. It is an action requiring

24   an EIS because, among other things:

25           a.    The Richardson Grove Project may or will have a significant environmental

26               effect, as outlined in this Complaint, within the meaning of the criteria set

27               forth in 40 C.F.R. § 1508.27.

28

1      b.     The Richardson Grove Project will have more than a minimal impact on

2             lands protected under Section 4(f) of the Department of Transportation Act.

3      c.     The Draft EA and the EA/FONSI, in conjunction with Caltrans' responses

4             to comments and other information in the record, raise a substantial

5             question as to whether the Project may have a significant effect on the

6             environment.

7      WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

8                              **EIGHTH CLAIM FOR RELIEF**

9                              **(Violation of Section 4(f))**

10     119.   Plaintiffs incorporate by reference all the allegations contained in the previous

11     paragraphs as though fully set forth herein.

12     120.   Section 4(f) of the Department of Transportation Act requires specific consideration

13     and analysis of environmental impacts of transportation activities that are proposed to take place in

14     parks, recreation areas, wildlife refuges and other public lands or areas with historical significance,

15     and prohibits an agency from using any public land meeting this criteria unless there has been a

16     determination that "(1) there is no feasible and prudent alternative to the use of such land, and (2)

17     such program includes all possible planning to minimize harm ... resulting from such use." 23

18     U.S.C. § 138, 23 C.F.R. Part 774. The "no feasible and prudent alternative" 4(f) standard allows less

19     discretion for an agency to reject alternatives than under NEPA.

20     121.   Caltrans' Richardson Grove Project includes acquisition of and impact on lands

21     within the Richardson Grove State Park. Caltrans used a "programmatic" Section 4(f) determination

22     for the Richardson Grove Project, rather than conduct a complete analysis, claiming among other

23     things that the Richardson Grove Project is a federally funded improvement of an existing highway

24     and that the amount and location of land used does not impair the use of the remaining section 4(f)

25     land, i.e. the rest of the Richardson Grove State Park. By using the programmatic Section 4(f)

26     determination, Caltrans limited its analysis of alternatives to three standard alternatives: (1) no build

27     option, (2) an improvement of the highway without using the Section 4(f) land, or (3) building a new

28

1  facility on an alternative location without using the Section 4(f) land.  Caltrans rejected all three

2  alternatives in its EA/FONSI.

3        122.    Caltrans violated its obligations under Section 4(f) by, among other things, using the

4  "programmatic" Section 4(f) and by failing to properly evaluate feasible and prudent alternatives to

5  the proposed action, which include and are not limited to:

6            a.    an alternative to altering and cutting roots and compacting the root systems of

7              ancient Redwood trees averaging more than seven feet in diameter,

8            b.    changing the Richardson Grove Project design to avoid certain Redwood trees,

9            c.    reducing the speed limit through the Grove in light of the fact that certain

10              STAA trucks are already permitted to travel through the Grove and there is no

11              evidence of safety impacts related to such transport, and

12            d.    providing uniform STAA truck access without disturbing the existing road

13              through and land of the Richardson Grove State Park.

14        123.    Caltrans also violated Section 4(f) by failed to include all possible planning to

15  minimize harm, and to maintain or enhance the natural beauty of the lands traversed, including by

16  not limited to:

17            a.    protect the ancient Redwood trees and their root systems,

18            b.    not touch any Redwoods or their root systems within the Richardson Grove

19              State Park that are 30 inches or larger in diameter,

20            c.    not allow any roots of Redwoods to be cut,

21            d.    document the presence or absence of protected species and other biological

22              resources and fully analyze the potential significant environmental effects

23              associated with the Richardson Grove Project before the Richardson Grove

24              Project commences,

25            e.    avoid impacts to cultural resources, and

26            f.    avoid impacts associated with excavation, handling, and disposal of lead-laden

27              soils.

28        WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COMPLAINT**

1

2

## NINTH CLAIM FOR RELIEF

### (Wild and Scenic Rivers Act)

3      124.    Plaintiffs incorporate by reference all the allegations contained in the previous
4  paragraphs as though fully set forth herein.

5      125.    Section 7 of the Wild and Scenic Rivers Act imposes a duty on federal agencies to
6  protect the free-flowing condition and other values of designated rivers. Pursuant to a Memorandum
7  of Understanding, Caltrans assumed the Federal Highway Administration's obligation to comply
8  with the Wild and Scenic Rivers Act. "[N]o department or agency of the United States shall assist
9  by loan, grant, license or otherwise in the construction of any water resources project that would have
10 a direct and adverse effect on the values for which such river was established . . ." 16 U.S.C. § 1278
11 (a). Absent congressional intervention, projects may not be authorized or commenced which have
12 an adverse effect on the values for which the river is designated.

13      126.    Implementation of Section 7 requires rigorous and consistent evaluation procedures
14 to protect river resources, and the determination as to effect of the project lies with one of the four
15 federal river-administering agencies. The National Park Service is the federal river-administering
16 agency for the South Fork Eel River.

17      127.    The Richardson Grove Project is a water resources project for which Section 7
18 consultation with and determination by the National Park Service is required. The Project is within
19 one mile of the federally designated wild and scenic Eel River, and will have a direct and adverse
20 effect on the values for which the river was designated. In violation of Section 7, Caltrans failed to
21 consult with and seek a Section 7 determination from the National Park Service when Caltrans
22 changed the project scope and moved the retaining wall closer to the Eel River and just upstream
23 from a chronic slip-out, requiring excavation to 20 feet, removal of large, native trees, and deposition
24 of lead laden soils.

25      WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

26

27

28

## COMPLAINT

1

**TENTH CLAIM FOR RELIEF**

2

**(Violations of APA)**

3     128.    Plaintiffs incorporate by reference all the allegations contained in the previous
4  paragraphs as though fully set forth herein.

5     129.    The Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, entitles a party
6  to seek judicial review of an agency action where a legal wrong is alleged and the party alleging the
7  violation is adversely affected or aggrieved by the agency action. Pursuant to 5 U.S.C. § 706(2)(A),
8  a reviewing court shall hold unlawful and set aside an agency action found to be arbitrary, capricious,
9  or otherwise not in accordance with the law. Defendants acted illegally for all the reasons set forth
10  above.

11     130.    Caltrans acted illegally and in violation of the APA by approving and adopting the
12  EA/FONSI and Richardson Grove Project which do not fully comply with NEPA and Section 4(f)
13  of the Department of Transportation Act as set forth above.

14     131.    Due to Defendants' knowing and conscious failure to comply with NEPA and Section
15  4(f), Plaintiffs have suffered legal wrongs because of agency action and are adversely affected and
16  aggrieved by agency action within the meaning of the Administrative Procedure Act, 5 U.S.C. § 702.

17     132.    Defendants' knowing and conscious failure to comply with NEPA is arbitrary,
18  capricious, and an abuse of discretion, not in accordance with law, in excess of statutory jurisdiction,
19  and without observance of procedure required by law within the meaning of the APA, 5 U.S.C. §
20  706(2), and should therefore be declared unlawful and set aside by this Court.

21     WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

22

**ELEVENTH CLAIM FOR RELIEF**

23

**(Injunctive Relief)**

24     133.    Plaintiffs incorporate by reference all the allegations contained in the previous
25  paragraphs as though fully set forth herein.

26     134.    The Richardson Grove Project as approved by Caltrans will cause irreparable
27  injury and harm to State Park resources, to Plaintiffs and to the public at large. Its significant
28  environmental impacts have not been adequately evaluated, much less mitigated to a less than

⊕
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

40

1   significant level, and feasible and reasonable alternatives have not been properly evaluated by

2   Caltrans, as required by law and as set forth in this Complaint.

3       135.    The errors and arbitrary and capricious conduct by Caltrans constitute the bases

4   for injunctive relief to prevent this irreparable injury pursuant to Rule 65 of the Federal Rules of

5   Civil Procedure and other applicable law.

6           WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

7                                   **PRAYER FOR RELIEF**

8           WHEREFORE, Plaintiffs pray for judgment and further relief as follows:

9       1.      Declare  that Defendants have violated the NEPA, Federal Highway statutes, and

10  the Wild and Scenic River Act as alleged herein;

11      2.      Declare that Defendants' violation of NEPA and Section 4(f) of the Department of

12  Transportation Act of 1966, 23 U.S.C. § 138, 49 U.S.C. § 309, and implementing regulations at

13  23 C.F.R. Part 774, and the Wild and Scenic Rivers Act constitute agency action unlawfully

14  withheld or unreasonably delayed, or are arbitrary, capricious, an abuse of discretion, or

15  otherwise not in accordance with law, under the Administrative Procedure Act;

16      3.      Set aside Defendants' approval, EA/FONSI and Decision Notice including

17  certification of the Final Environmental Impact Report/Environmental Assessment and Section

18  4(f) Evaluation, and all related findings and approvals, and require Defendants to follow federal

19  statutes and regulations, including NEPA and Section 4(f) of the Department of Transportation

20  Act of 1966, 23 U.S.C. § 138, 49 U.S.C. § 309, and implementing regulations at 23 C.F.R. Part

21  774, and Section 7 of the Wild and Scenic Rivers Act in any review of and decision for the

22  Richardson Grove Project;

23      4.      Grant interlocutory and permanent injunctive relief enjoining Defendants, and

24  each of them, from engaging in any activity pursuant to the Richardson Grove Project until the

25  Project complies with all applicable federal regulations and statutes, including requirements of

26  the National Environmental Policy Act, the Department of Transportation Act of 1966, and the

27  Wild and Scenic Rivers Act.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**

5.      Award costs of suit herein, including attorney fees, pursuant to the Equal Access

to Justice Act, 28 U.S.C. § 2412 or other authority; and

6.      Grant such other and further equitable or legal relief as the Court deems just and

proper.

DATED: September 27, 2010                    **COTCHETT, PITRE & McCARTHY**

By _____
         PHILIP L. GREGORY
         *Attorneys for Plaintiffs*